AMBIKA KUMAR (*pro hac vice* pending)
  ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3150

ADAM S. SIEFF (State Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800

SARAH E. BURNS (State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94110
Telephone: (415) 276-4892

Attorneys for Defendant
DISCORD Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>       Plaintiff,<br><br>  v.<br><br>ROBLOX CORPORATION; DISCORD INC.; and DOES 1 – 50, inclusive,<br><br>       Defendants. | Case No. 4:25-cv-03520-YGR<br><br>**DISCORD INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Declarations of Adam Sieff and Nicholas Reynolds Filed Concurrently]<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date: October 14, 2025<br>Time: 2:00 p.m.<br>Courtroom: 1<br><br>Complaint Filed: April 21, 2025<br>Date Action Removed: April 22, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 14, 2025 at 2:00 p.m. in Courtroom 1 of the First Street Courthouse of the United States District Court for the Northern District of California, located on the fourth floor of 1301 Clay Street, Oakland, California 94612, Defendant Discord Inc. will move, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, for an order compelling arbitration of Plaintiff's claims and staying the proceedings pending completion of arbitration. *See* 9 U.S.C. § 3.

Plaintiff Jane Doe asserts claims based on her use of Discord, an online service that facilitates communication, which she claims an adult used to coerce her into sending him sexually explicit material. But Plaintiff assented to Discord's Terms of Service, under which Plaintiff (1) promised to arbitrate any disputes with Discord concerning Discord's services; and (2) agreed that the arbitrator would decide all disputes over the scope and enforceability of the arbitration agreement. As a result, Plaintiff must arbitrate her claims against Discord, including any objections to the arbitration agreement.

This Motion is based on this Notice and Motion; the attached Memorandum of Points and Authorities; the concurrently filed declarations of Nicholas Reynolds and Adam Sieff; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this Motion.

Dated: August 4, 2025                    DAVIS WRIGHT TREMAINE LLP

                                         By: */s/ Adam S. Sieff*
                                              Ambika Kumar
                                              Adam S. Sieff
                                              Sarah E. Burns

                                         Attorneys for Defendant
                                         Discord Inc.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 1

    A. Discord's Services ............................................................................................... 1

    B. Discord Users Agree To Be Bound By The Terms of Service. ............................ 1

    C. The Terms of Service Contain a Conspicuous, Mandatory Arbitration Agreement That Delegates Questions of Enforceability to the Arbitrator. ............. 3

    D. Discord Requires Users To Be Bound by the Terms When The Terms Are Updated. ............................................................................................................... 4

    E. Plaintiff Repeatedly Agreed To the Terms, Including as an Adult. ..................... 5

    F. Contrary to the Arbitration Agreement, Plaintiff Files Suit. ................................ 6

III. LEGAL STANDARD .................................................................................................... 6

IV. ARGUMENT .................................................................................................................. 7

    A. Plaintiff Agreed to Arbitrate When She Assented to Discord's Terms. ............... 7

    B. Plaintiff's Defenses To Arbitration Must Be Decided By The Arbitrator ........... 10

    C. The Court Should Stay These Proceedings Pending Arbitration ........................ 10

V. CONCLUSION ............................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aaris v. Las Virgenes Unified Sch. Dist.*,
    64 Cal. App. 4th 1112 (1998) .................................................................................................. 9

*Adibzadeh v. Best Buy, Co., Inc.*,
    2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ........................................................................... 8

*Angelilli v. Activision Blizzard, Inc.*,
    2025 WL 524276 (N.D. Ill. Feb. 18, 2025) .............................................................................. 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................................................. 7

*B.D. v. Blizzard Ent., Inc.*,
    76 Cal. App. 5th 931 (2022) ................................................................................................. 7, 8

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................................................. 7

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ............................................................................. 9

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022) ................................................................................................ 10

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) ............................................................................................................... 10

*Dean Witter Reynolds, Inc. v Byrd*,
    470 U.S. 213 (1985) ................................................................................................................. 6

*Dep't of Motor Vehicles for Use & Benefit of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of
    N. Am., Inc.*,
    408 So. 2d 627 (Fla. 2d DCA 1981) ........................................................................................ 7

*Doyle v. Giuliucci*,
    62 Cal. 2d 606 (1965) .............................................................................................................. 9

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................................. 7

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ..................................................................................... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ................................................................................................................... 6

*Hohe v. San Diego Unified Sch. Dist.*,
   224 Cal. App. 3d 1559 (1990) ................................................................................................ 9

*Howsam v. Dean Witter Reynolds*,
   537 U.S. 79 (2002) .................................................................................................................. 7

*Lee v. DoNotPay, Inc.*,
   683 F. Supp. 3d 1062 (C.D. Cal. 2023) ................................................................................... 8

*Mahram v. The Kroger Co.*,
   104 Cal. App. 5th 303 (2024) .................................................................................................. 8

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ................................................................................................. 10

*Mortensen v. Bresnan Commc'ns, LLC*,
   722 F.3d 1151 (9th Cir. 2013) ................................................................................................. 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................... 6

*N.A. v. Nintendo of Am., Inc.*,
   2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ...................................................................... 10

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ................................................................................................ 7, 8

*Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*,
   44 Cal. App. 5th 834 (2019) .................................................................................................... 9

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .................................................................................................... 9

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ............................................................................................................ 7, 10

*S.T.G. v. by & through Garcia v. Epic Games, Inc.*,
   752 F. Supp. 3d 1200 (S.D. Cal. 2024) *appeal filed sub nom E.V.A. v. Epic Games,
   Inc.*, No. 24-6443 (9th Cir. Oct. 22, 2024) ............................................................................ 10

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) .............................................................................................................. 10

*Temple v. Best Rate Holdings LLC*,
   360 F. Supp. 3d 1289 (M.D. Fla. 2018) .................................................................................. 7

*Ticketmaster Corp. v. Tickets.com, Inc.*,
   2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ........................................................................ 9

**Statutes**

9 U.S.C.
    § 2 (Federal Arbitration Act)........................................................................................... *passim*
    § 3 ................................................................................................................................................ 10

**Other Authorities**

JAMS Comprehensive Arbitration Rules & Procedures
    (https://www.jamsadr.com/files/Uploads/Documents/JAMS-
    Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf) ..................................................... 4

JAMS Comprehensive Arbitration Rules & Procedures
    (https://www.jamsadr.com/files/Uploads/Documents/JAMS-
    Rules/JAMS_comprehensive_arbitration_rules-2014.pdf) ........................................................ 4

## I. INTRODUCTION

Plaintiff alleges that Defendants Roblox Corporation and Discord Inc. are liable for injuries she suffered after a man whom she met using Roblox coerced her into sending him sexually explicit images and videos of herself, including on Discord's platform. Compl. ¶¶ 205, 215-221. Discord assiduously tries to prevent misuse of its platform and cannot be liable for failing to do so perfectly. But this Court need not reach the merits, as Plaintiff agreed to resolve her dispute in arbitration.

Plaintiff repeatedly assented to Discord's Terms of Service, which include a conspicuous arbitration agreement that encompasses her claims. The agreement also contains a clear and unmistakable delegation clause, which requires the arbitrator to decide all disputes concerning the scope and enforceability of the agreement. Plaintiff is bound by this agreement.

In the Complaint, Plaintiff purports to disaffirm the Terms, such that the Terms do not govern. But since turning 18, Plaintiff created another Discord account, rendering her disaffirmation argument irrelevant. In any event, the arbitrator, not this Court, decides the effect of Plaintiff's purported disaffirmance.

Plaintiff cannot bring this action in this Court. The Court should order Plaintiff to arbitrate the case and should stay this case until arbitration is complete.

## II. STATEMENT OF FACTS

### A. Discord's Services

Discord is an online service that enables people to communicate with each other by making calls, sending messages, and sharing documents, pictures, videos, and other media. Compl. ¶ 137.

### B. Discord Users Agree To Be Bound By The Terms of Service.

The Terms of Service are an agreement between Discord and users that governs the use of Discord's services, namely Discord's "services, apps, websites, and other products." Declaration of Nicholas Reynolds Ex. K. To use the services, a user must first create a Discord account. *Id*. Creating a Discord account requires first accepting the Terms of Service. *Id.* ¶ 5.

To create an account using an Android device in 2022, as Plaintiff did, users were required to click a button labeled "create an account" above language stating that "By registering, you agree to Discord's Terms of Service and Privacy Policy." *Id.* ¶ 6.



The phrases "Terms of Service" and "Privacy Policy" were displayed in bright turquoise-blue text that contrast with other language to indicate that they are hyperlinks. *Id*. When a user clicks the "Terms of Service" hyperlink, they are shown the entirety of the Terms in effect. *Id*.

To create an account using the Discord desktop app, as Plaintiff did in 2025, *id.* ¶¶ 5, 9-10, users are similarly required to click a button labeled "create an account" below language stating that "By clicking 'Create Account' you agree to Discord's Terms of Service and have read the Privacy Policy." *Id.* ¶ 9.



**C.     The Terms of Service Contain a Conspicuous, Mandatory Arbitration Agreement That Delegates Questions of Enforceability to the Arbitrator.**

Since at least 2020, the Terms have contained a conspicuous agreement to arbitrate. *Id.* Exs. H-K. The most recent version of the Terms calls attention to the agreement in a bolded introductory paragraph with hyperlinked purple text stating:

> **IMPORTANT NOTE: The section titled "Settling Disputes Between You and Discord" contains an arbitration clause and class-action waiver that applies to all U.S.-based Discord users. Please read this section carefully as it may significantly affect your legal rights, including your right to file a lawsuit in court.**

Clicking the hyperlinked purple text takes a user to Section 16, the section titled "Settling Disputes Between You and Discord." *Id.* at Ex. K. A user may also view the Terms by scrolling down to Section 16, or by clicking another purple hyperlink that reads "16. Settling disputes between you and Discord" in the Terms' table of contents. *Id*.

Section 16 requires the user to first attempt to resolve any dispute with Discord informally. *Id*. If the parties cannot resolve the dispute this way, the user agrees to mandatory arbitration. The bolded **"Agreement to arbitrate"** provision states, in relevant part, "you and Discord agree to resolve any dispute, disagreement, or claim relating to these terms or our services through final and binding arbitration in the U.S. county where you reside." *Id*.

The Terms, which are expressly governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, also state that "the arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these terms of service," including claims that the terms are void or voidable or that the claim is not within the arbitration clause. *Id*.

The Terms permit a user to decline the agreement to arbitrate by emailing a notice to a specified email address by the later of (1) 30 days from when the user first registered their Discord account or (2) April 15, 2024. *Id*. The Complaint does not allege and Discord has no records suggesting that Plaintiff or her father followed this opt-out procedure. Reynolds Decl. ¶ 13.

Discord has made a few changes to the arbitration agreement in the Terms since January 1, 2020. Reynolds Decl. Exs. H-K. Only two updates are relevant here. First, the 2023 Terms replaced

rules provided by JAMS as the rules governing arbitration proceedings with those provided by the American Arbitration Association. Second, the 2024 Terms expressly covered "claims that arose, were asserted, or involve facts occurring before the existence of this arbitration agreement or any prior agreement as well as claims that may arise after the termination of this arbitration agreement[.]" Reynolds Decl. Exs. J-K. At all times since at least 2020, the Terms have included a conspicuous arbitration clause that is expressly governed by the FAA, and that requires any disputes regarding arbitrability be decided by the arbitrator.[1] *Id*.

### D. Discord Requires Users To Be Bound by the Terms When The Terms Are Updated.

Discord sometimes updates the Terms. The Terms provide that "[i]f these changes materially affect your Discord use or your legal rights, we'll give you reasonable advance notice (unless the updates are urgent). If you continue to use our services after the changes have taken effect, it means that you agree to the changes. If you don't agree, you must stop using our services." Reynolds Decl. Ex. K.

Since at least 2023, Discord has required users to click a button to manifest their agreement to the updated Terms, with language stating that "[b]y clicking Agree, you acknowledge that you agree to Discord's Terms of Service and have read our Privacy Policy."

---

[1] Although a previous version of the Terms did not expressly contain a delegation clause, those Terms selected the JAMS Rules as governing arbitration, which themselves have a delegation clause. Reynolds Decl. Ex. I. *See also* https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2014.pdf (last visited Aug. 4, 2025) (JAMS rules in effect in 2020); https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf (last visited Aug. 4, 2025) (JAMS rules in effect from 2021 to present).



This language appears beneath the phrase "Terms of Service," which is displayed in bright turquoise-blue text that contrasts with other language to indicate it is a hyperlink. Reynolds Decl. ¶ 11. When a user clicks the "Terms of Service" hyperlink, they are shown the entirety of the Terms in effect.

E.     **Plaintiff Repeatedly Agreed To the Terms, Including as an Adult.**

Plaintiff's counsel provided Discord an email address and username associated with the Discord account Plaintiff allegedly used. Declaration of Adam Sieff ¶ 2. Discord located an account associated with this information that was created on August 26, 2022, Reynolds Decl. ¶ 2, when Plaintiff was a minor, Compl. ¶ 7. The Terms state:

> By accessing our services, you confirm that you're at least 13 years old and meet the minimum age required by the laws in your country…. If you are old enough to access our services in your country, but not old enough to have authority to consent to our terms, your parent or legal guardian must agree to our terms on your behalf. Please ask your parent or legal guardian to read these terms with you. If you're a parent or legal guardian, and you allow your child (who must meet the minimum age for your country) to use the services, then these terms also apply to you and you're responsible for your child's activity on the services, including purchases made by them. For more information on purchases, see "Discord's Paid Services" below.

Reynolds Decl. Ex. K. Plaintiff claims she stopped using Discord in 2022, Compl. ¶¶ 214, 225, but this account remains open and was accessed as recently as May 29, 2025. Reynolds Decl. ¶ 2.

Discord's records show Plaintiff created a second account on May 2, 2025, after she turned 18 and after she filed this lawsuit, which she used as recently as July 28, 2025. *Id.* ¶ 3. Discord's

records also indicate that Plaintiff's father has an account used as recently as January 20, 2025. *Id*. ¶ 4; *see also* Sieff Decl. ¶¶ 3-9.

The user, upon creating all three of these accounts, assented to the Terms in the manner described in Section C. Reynolds Decl. ¶¶ 5-11. In addition, the account Plaintiff created as a minor was used to click to assent to updated Terms on March 31, 2023, and April 15, 2024, as she was required to do to continue using Discord. *Id.* ¶ 12. Similarly, the account associated with Plaintiff's father was used to click assent to the updated Terms on March 28, 2022, April 11, 2023, and May 12, 2024. *Id*.

**F.     Contrary to the Arbitration Agreement, Plaintiff Files Suit.**

Plaintiff filed this action in San Francisco Superior Court. Roblox removed it to this Court on April 22, 2025. ECF 1. The Complaint alleges that Plaintiff met an adult on Roblox and later communicated with him on Discord, Compl. ¶ 3, and that the adult coerced Plaintiff into sending him sexually explicit images and videos of herself. *Id.* ¶¶ 3, 219-222. Against Discord, the Complaint asserts claims for fraudulent concealment and misrepresentation, (Compl. ¶¶ 226-246); simple negligence (¶¶ 262-287); negligence by failure to warn (¶¶ 288-307); negligence by unreasonable design (¶¶ 308-330); negligent undertaking (¶¶ 331-349); strict liability by design defect (¶¶ 350-377); and strict liability by failure to warn (¶¶ 378-397).

## III.    LEGAL STANDARD

The FAA reflects federal policy recognizing that "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). The statute "leaves no place for the exercise of discretion." *Dean Witter Reynolds, Inc. v Byrd*, 470 U.S. 213, 218 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Any party "challenging the enforceability of an arbitration agreement bear[s] the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citation omitted).

Ordinarily, a court considering a motion to compel arbitration must limit its review to two issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the

agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002); *accord Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But a court must not reach the second question if the arbitration agreement "clearly and unmistakably" delegates to the arbitrator threshold issues such as the scope, validity, and enforceability of the agreement. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (parties may delegate "threshold issues concerning the arbitration agreement"). The only question in such cases is whether an arbitration agreement between the parties exists. *Id.* at 69 n.1, 88 n.2 ("[t]he issue of the agreement's validity is different from the issue whether any agreement between the parties was ever concluded," i.e., whether "it was in fact agreed to") (quotation marks & citation omitted). Because such an agreement exists here, the Court should compel arbitration.

IV.    **ARGUMENT**

   A.    **Plaintiff Agreed to Arbitrate When She Assented to Discord's Terms.**

Whether Plaintiff agreed to arbitrate is a question of state law under the FAA. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although Plaintiff lives in Florida, the Terms require application of California law. *See* Reynolds Decl. Ex. K § 16; *Dep't of Motor Vehicles for Use & Benefit of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. 2d DCA 1981) (parties' choice of law governs).[2]

Discord's Terms present a classic, enforceable "clickwrap" or "sign-in wrap" agreement because users must click a button to accept the Terms before accessing Discord. *See B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 945 (2022). Courts applying California law enforce these agreements where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quotation marks & citation omitted). Thus, in

---

[2] In any event, the arbitration agreement is valid under Florida law. Compl. ¶ 5. *See, e.g.*, *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1305 (M.D. Fla. 2018) (agreement enforceable where "Terms and Conditions" hyperlink "was placed in a manner conspicuous enough to provide reasonable notice to a prudent user").

*Oberstein*, the Ninth Circuit found enforceable an agreement requiring a user to click a button at account creation stating that "[b]y continuing past this page, you agree to the Terms of Use," where "Terms of Use" appeared in blue text and linked to the terms. *Id.* at 515–16. Numerous state and federal courts applying California law have enforced similar agreements. *See, e.g.*, *Mahram v. The Kroger Co.*, 104 Cal. App. 5th 303, 306, 308–09 (2024) (button next to language stating "[b]y signing up, you agree" to terms); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1075 (C.D. Cal. 2023) (button "directly above reasonably conspicuous and explicit language" stating clicking "would manifest assent" to hyperlinked terms); *Adibzadeh v. Best Buy, Co., Inc.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) ("mutual assent manifests" when users "accept 'clickwrap' agreements").

   The processes by which Plaintiff accepted the Terms fit squarely within this authority. To create her Discord account in May 2025, Plaintiff clicked "Create Account" immediately below a notice stating that "By clicking 'Create Account,' you agree to Discord's Terms of Service and have read the Privacy Policy." Reynolds Decl. ¶ 9. *See also id.* ¶ 6 (August 2022 notice explaining that "By registering, you agree to Discord's Terms of Service and Privacy Policy." Plaintiff had the opportunity to review the Terms before accepting by clicking the phrase "Terms of Service," which appeared in blue font and contained a one-click hyperlink to the Terms.) *Id.*

   Plaintiff's first account, created in August 2022, also clicked to manifest assent to the updated Terms in March 2023 and April 2024. *Id.* ¶ 11. Immediately below the button she was required to click, the screen informed Plaintiff that clicking "Agree" meant agreeing to the Terms. *Id*. She could easily have reviewed the Terms before deciding to accept by simply clicking the hyperlinked "Terms of Service" text set out in blue font in the notice itself. *Id*.

   Plaintiff therefore entered an enforceable arbitration agreement by clicking "Create Account" when she created her accounts in August 2022 and (as an adult) in May 2025, and "Agree" each time updated Terms were sent to her. Reynolds Decl. ¶¶ 6, 9, 11. *See Oberstein*, 60 F.4th at 515–16 (enforcing such an agreement); *B.D.*, 76 Cal. App. 5th at 943 (same). Additionally, Plaintiff manifested continued assent to the Terms by continuing to use Discord's services as recently as July 28, 2025, as an adult. Reynolds Decl. ¶ 3. Under California law, parties can consent

to updated terms through their continued use of services without objection. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 933–34 (N.D. Cal. 2024) (plaintiff assented to arbitration agreement by continuing to use services after receiving notice that continued use would amount to assent); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, *5 (N.D. Cal. Apr. 1, 2005) (same rule); *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) (same rule); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401–03 (2d Cir. 2004) (finding assent from continued use after notice of terms). Here, Plaintiff not only clicked "Agree" to agree to the updated Terms in 2023 and 2024, she continued to use Discord's services after Discord sent her notices providing those updates. Reynolds Decl. ¶¶ 2-3, 11. Since Plaintiff did not cease using Discord's service including as an adult, *id.* Ex. C, her continued use also constitutes assent.

Although the Complaint does not say who clicked to create the 2022 account, it makes no difference because Plaintiff created a second account and agreed to the Terms as an adult in 2025. *See id.* ¶ 3. But to the extent the 2022 account matters, and to the extent Plaintiff maintains that her father clicked to create that account, Plaintiff is still bound by his assent. *See* Ex. K § 2 (assent to terms on behalf of minor binds minor and parent); *see also, e.g.*, *Doyle v. Giuliucci*, 62 Cal. 2d 606, 610 (1965) (authority to bind child to arbitrate "is implicit in a parent's right and duty to provide for the care of his child"); *Aaris v. Las Virgenes Unified Sch. Dist.*, 64 Cal. App. 4th 1112, 1120 (1998) (parent's release enforceable against child); *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1565 (1990) (same). Plaintiff is also bound as a third-party beneficiary of the Terms. *Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 841 (2019) ("a nonsignatory may be compelled to arbitrate where the nonsignatory is a third party beneficiary of the contract"). *See, e.g.*, *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *12 (N.D. Ill. Feb. 18, 2025) (minor was third-party beneficiary of gaming account created for the minor's use and therefore bound to arbitrate under terms governing that account); Compl. ¶ 218 (referring to the "Discord username" as belonging to Plaintiff); ¶ 219 (alleging the predator "became 'friends' with Plaintiff on Discord").

### B. Plaintiff's Defenses To Arbitration Must Be Decided By The Arbitrator

The Court need not and may not proceed further to compel arbitration. *Rent-A-Ctr.*, 561 U.S. at 69 n.1, 70, 88 n.2. The Terms state that the arbitrator shall have "exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability[,] or formation of these terms." Reynolds Decl. Exs. J-K Delegation clauses of this kind leave no room for discretion. *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (enforcing similar clause). Only arguments "specifically" challenging a delegation clause itself—not arguments generalizable to a contract or even an arbitration agreement "as a whole"—may be heard by a court once an agreement to arbitrate is found. *See Rent-A-Ctr.*, 561 U.S. at 70–72.

Although Plaintiff purports to "disaffirm[]" any contract with Discord, "including any contract containing a forced arbitration agreement and any delegation clause in any contract," Compl. ¶ 7—her disaffirmation is irrelevant because she assented to the arbitration agreement as an adult. Reynolds Decl. ¶ 3. In any event, this issue must be presented to the arbitrator because it challenges the enforceability of the Terms in their entirety, not the *delegation clause* specifically. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (argument that by its nature "challenges the enforceability of the arbitration provision as a whole," and not "the district court's authority to enforce the *delegation clause*" in particular, must be delegated to the arbitrator); *see, e.g.*, *S.T.G. v. by & through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1209–10 (S.D. Cal. 2024) (reviewing case law and concluding that minor disaffirmation defenses to arbitration agreements with delegation clauses must thus always be delegated to the arbitrator) *appeal filed sub nom E.V.A. v. Epic Games, Inc.*, No. 24-6443 (9th Cir. Oct. 22, 2024); *N.A. v. Nintendo of Am., Inc.*, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023) (similar).

### C. The Court Should Stay These Proceedings Pending Arbitration

Where a dispute is subject to arbitration under the terms of a written agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) ("[t]he FAA's structure and purpose confirm that a stay is required"). The matter must be stayed even if the Court declines to order arbitration, to permit Discord to pursue any appeal. *See Coinbase, Inc. v. Bielski*,

599 U.S. 736, 744 (2023) ("a district court [must] stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing").

## V. CONCLUSION

For these reasons, Discord respectfully requests an order granting its motion to compel arbitration, and staying Plaintiff's claims pending the outcome of arbitration.

Dated: August 4, 2025                    DAVIS WRIGHT TREMAINE LLP

By: */s/ Adam S. Sieff*
Ambika Kumar
Adam S. Sieff
Sarah E. Burns

Attorneys for Defendant
Discord Inc.